(No. 33845.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DARRELL BILDERBACK, Plaintiff in Error.

*Opinion filed September 25, 1956.*

PAUL E. THURLOW, of Joliet, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and MARTIN J. CORBELL, State's Attorney, of Vandalia, (FRED G. LEACH, and EDWIN A. STRUGALA, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The problem here is one of statutory construction. Darrell Bilderback was indicted in the circuit court of Fayette County for the crime of assault with intent feloniously to escape from the Illinois State Farm at Vandalia. He pleaded guilty and was sentenced to the penitentiary for a term of not less than seven nor more than twelve years. The case is here on writ of error, and the question

presented is the propriety of the judgment in view of the statutory change which took place between the commission of the offense and the judgment of conviction.

The offense occurred on July 9, 1951. At that time section 5 of the State Farm Act provided: "Whoever being a prisoner at the Illinois State Farm escaped [*sic*] therefrom is guilty of a felony and upon conviction shall be imprisoned in the penitentiary not less than one year nor more than ten years." (Ill. Rev. Stat. 1949, chap. 118, par. 18.) Defendant was not indicted for escape from the State farm, but was indicted and sentenced for an assault under section 23 of division I of the Criminal Code: "An assault with an intent to commit murder, rape, mayhem, robbery, larceny, *or other felony,* shall subject the offender to imprisonment in the penitentiary for a term of not less than one year nor more than fourteen years." (Italics supplied.) Ill. Rev. Stat. 1955, chap. 38, par. 58.

Defendant was indicted on August 31, 1951. He pleaded guilty and was sentenced the same day. In the interim between the offense and the judgment, section 5 of the State Farm Act had been amended to read as follows: "Whoever being a prisoner at the Illinois State Farm escapes therefrom or escapes while in the custody of an employee of the farm shall be imprisoned either in the county jail for not more than one year or in the penitentiary not less than one year nor more than ten years." (Laws of 1951, p. 1971; Ill. Rev. Stat. 1955, chap. 118, par. 18.) The amendment became effective on August 2, 1951, when it was approved by the Governor. (*Weil-McLain Co.* v. *Collins,* 395 Ill. 503.) By authorizing the alternative punishment of imprisonment in the county jail, the amendment changed the offense of escape from the Illinois State Farm from a felony to a misdemeanor. Ill. Rev. Stat. 1955, chap. 38, pars. 585, 586; *People* v. *Bain,* 359 Ill. 455, 470.

Until the amendment, escape from the Illinois State Farm was a felony, and an assault with intent to escape

was therefore, in the language of section 23 of division I of the Criminal Code, "An assault with intent to commit * * * felony." After the amendment, such an assault was no longer an assault with intent to commit a felony. While the Criminal Code defines an assault, (Ill. Rev. Stat. 1955, chap. 38, par. 55,) and fixes the penalty for assault with intent to commit a felony, (Ill. Rev. Stat. 1955, chap. 38, par. 58,) it contains no general provision with respect to assault with intent to commit a misdemeanor. Assault with intent to commit larceny has been held to fall within section 23 of division I of the Criminal Code, although larceny may be either a felony or a misdemeanor depending upon the value of the property taken. (*Kelly* v. *People,* 132 Ill. 363; cf. *People* v. *Dogoda, post.* 198, decided this day.) But larceny is one of the offenses specifically mentioned in the section, whereas the present offense is included only because it falls within the clause, "or other felony."

The net of it is that while defendant's act was a felony when it was committed, the offense of which he was convicted no longer existed when he pleaded guilty and was sentenced. The amendment contained no saving clause as to offenses previously committed. In this situation at common law there would have been no doubt as to the result, for when a penal statute was repealed all prosecutions under it which had not reached final judgment were abated. *United States* v. *Chambers,* 291 U.S. 217.

The People argue, however, that section 4 of the Statutory Construction Act (Ill. Rev. Stat. 1955, chap. 131, par. 4,) requires a different result. That section provides: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, for-

feiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

Upon its face this statute would seem to dispose of the problem for there was here an "offense committed against the former law" which is not to be affected by the repeal. There are, however, two decisions which suggest a contrary view. One of them, *People ex rel. Eitel* v. *Lindheimer,* 371 Ill. 367, involved the effect of the repeal of a section of the Revenue Act which provided that taxes paid on an excessive valuation of property should be refunded or credited upon subsequent taxes. This section was enacted in 1934 and expressly repealed in 1935. The relators sought to secure refunds or credits after the repeal. The court held that the taxpayers had no vested right to a refund or credit, and that "The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them." (371 Ill. at 373.) The court then considered the effect of section 4 of the Statutory Construction Act and said: "Where the legislature passes a repealing act and nothing is substituted for the act that is repealed, the effect is to obliterate such statute as completely as if it had never been passed. (*Merlo* v. *Johnston City and Big Muddy Coal Co.* [258 Ill. 328].) The holdings that such a repeal wipes out all remedies under the prior statute and leaves the parties where the repeal finds them, (*People* v. *Clark,* [283 Ill. 221,] and

other authorities above cited,) necessarily makes the repealing act retrospective. The intent of the legislature that it should be so is manifest from the nature of the absolute repeal, which is quite different from an act which shows an intent to continue or only to change a remedy or penalty under a former statute." 371 Ill. at 375.

The result reached in the *Lindheimer case* was sound enough under our decisions dealing with "special remedial statutes" and procedural matters, (cf. *Orlicki v. McCarthy,* 4 Ill.2d 342; see note, 45 Ill. L. Rev. 109,) but the two cases relied upon do not support the statements made as to the effect of the Statutory Construction Act. *Merlo v. Johnston City and Big Muddy Coal and Mining Co.* 258 Ill. 328, involved the effect of a revision of the law applicable to coal mines. The question was whether or not the revised statute, which contained no saving clause, extinguished rights of action under the earlier act which was repealed. Relying upon the Statutory Construction Act, the court held that the right of action was saved despite the repeal. The statement attributed to the *Merlo* opinion was indeed used by the court in that case, but it was used in describing the rule at common law which the Statutory Construction Act was designed to change. The other case relied upon, *People ex rel. Foote v. Clark,* 283 Ill. 221, did not mention the Statutory Construction Act.

The other case which suggests that section 4 of the Stautory Construction Act is not applicable is *People v. Speroni,* 273 Ill. App. 572. There the Appellate Court held that the conviction of a defendant who had sold intoxicating liquor in violation of the Illinois Prohibition Act must be reversed when that act was repealed while the case was pending in the Appellate Court. In reaching that result the court emphasized the wording of section 4, pointing out that the section begins with the words, "No new law shall be construed * * *" and that it provides "that the proceedings thereafter shall conform, so far as prac-

ticable, to the laws in force at the time of such proceeding." Emphasizing these portions of the statute, the court concluded that the section "is intended to apply only to new acts of legislation amending existing acts, or to subsequent legislation which by repugnant provisions therein repeals or changes certain portions of an existing act. We do not believe that this section contemplates a complete extinction of an old act, without any new or subsequent legislation created to take its place." This conclusion of course wholly disregards the last sentence of section 4: "This section shall extend to all repeals either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

Other decisions of this court have expressed a contrary view of the language relied upon by the Appellate Court in the *Speroni* case. In *Mullinix* v. *People,* 76 Ill. 211, the defendant was indicted for selling intoxicating liquor to "a person in the habit of getting intoxicated." He was prosecuted under the act of 1872 which had been repealed by the statutory revision of 1874. The court said: "The 4th section of this latter statute, [the Statutory Construction Act] in express terms, saves and reserves the rights which have accrued under a repealed statute, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued. Hence the repeal of the former liquor law in nowise affected the people's right to prosecute for penalties incurred under that act, until barred by limitation." See, also: *Farmer* v. *People,* 77 Ill. 322; *People* v. *Nordenberg,* 362 Ill. 347.

The course of decision under section 4 of our Statutory Construction Act has not been smooth. (See note, 45 Ill. Law Rev. 109; cf. *Orlicki* v. *McCarthy,* 4 Ill.2d 342.) Whether the repeal of a statute is to operate retroactively is a problem difficult of generalized solution. Nor are the difficulties confined to Illinois. See note, 55 Col. L. R.

1040; Levitt, Repeal of Penal Statutes, 9 A.B.A.J. 715; Seeman, Retroactive Effect of Repeal Legislation, 27 Ky. L. J. 75.

The common-law rule operated unsatisfactorily. Under it the effect of the repeal depended upon the fortuitous circumstances of the apprehension and conviction of the defendant. If two men committed the identical crime on the same day, whether they were punished would depend upon when they were apprehended, and when their judgments of conviction, upon appeal or otherwise, became final. The reaction against the common-law rule took the form of generalized statements of legislative intention, like our section 4. They produce their own anomalous results. When a newer social view decides that certain conduct is no longer to be punished, the general statute steps in and imposes the punishment fixed by an earlier generation. Yet if the legislature has taken the lesser step of reducing the punishment, the criminal has the benefit of the new policy. So cases like *Speroni* are hard cases that put a great stress upon a general construction statute. Such a statute is at best the statement of a present legislature as to the intention of a future one. It is so easy to show that the statute, when applicable, has often been overlooked by lawyers and judges that it is hard to believe that legislators have always had it in mind. Without looking beyond our own borders, it is clear that here, at least, such a statute has not been an effective substitute for individualized statements of legislative purpose.

In the case at hand, solution is not complicated by doubt as to what the General Assembly intended. The present statutory situation is the coincidental result of the combined effect of the statutory definition of a felony plus the change in the punishment for escape from the State Farm. Nowhere in the combination of circumstances out of which this problem arose is there a suggestion that the legislature was expressing its purpose that conduct

which took place before the statutory change should no longer be criminal. No thought of a general pardon for those who had committed the offense here involved can be distilled from the circumstances of this legislative change. The case falls squarely within the terms of the Statutory Construction Act, and the judgment was correct.

*Judgment affirmed.*