(No. 50630.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. REUCSHELLE HARRIS, Appellant.

*Opinion filed January 26, 1979.*

Arnette R. Hubbard, of Chicago (Donald Hubert, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B.

Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

In a jury trial in the circuit court of Cook County, defendant, Reucshelle Harris, was convicted of the offense of armed robbery and sentenced to not less than 4 nor more than 12 years in the penitentiary. The appellate court affirmed (57 Ill. App. 3d 639), and we allowed defendant's petition for leave to appeal.

The facts are fully stated in the opinion of the appellate court and will be reviewed here only to the extent necessary to discuss the issues. The charge of which defendant was convicted involved the armed robbery of Amos Guilcrest and Michael King on a street in Chicago.

Defendant contends first that because of certain *ex parte* remarks made by the circuit court shortly after the jury was selected, she was deprived of her right to be tried by a fair and impartial jury. After the selection of the jury and prior to the making of opening statements, defendant's counsel requested that the court excuse one of the jurors. Counsel advised the court that during the noon hour, in the courthouse lobby, the juror had pointed out defendant to other persons, and that his face at that time indicated a dislike for defendant. The trial court, in chambers, out of the presence of the jury, advised the juror of the accusation and admonished him that if it were true the juror might be in contempt of court and would require an attorney. Subsequently, questioned under oath by defendant's attorney, the juror denied that he had pointed at defendant or had spoken with anyone about her. Defendant argues that the court's comments served to prejudice the juror against her and that the circuit court, in

order to safeguard her rights, should have discharged the juror and replaced him with an alternate. She argues, too, that having failed to do so the court was required to give "curative instructions" to the juror concerning defendant's right to a fair trial by an unbiased jury.

In *Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill. 2d 136, 139, the court said:

"The general rule for cases involving motions for new trial due to jurors' false testimony during *voir dire* has been stated in *Department of Public Works & Buildings v. Christensen* (1962), 25 Ill. 2d 273, 279-80:

'Our decisions make it clear that a motion for new trial will be denied unless it is established not only that the juror answered falsely, but also that prejudice resulted. \*\*\* This [is] a matter primarily within his [the trial judge's] discretion \*\*\*.' "

The same rule is applicable here. The transcript shows that the juror denied that he had spoken with anyone concerning defendant, and we fail to see in what manner the circuit court's refusal to discharge the juror was prejudicial to defendant. We find no abuse of discretion in the circuit court's failure to discharge the juror or to give additional "curative instructions."

Defendant contends next that the circuit court erred in refusing to permit her to recall Ernest Luckett for the purpose of eliciting testimony to impeach certain portions of the testimony of the complainant, Amos Guilcrest. It was defendant's theory, and she testified at trial, that although admittedly she was present when Maurice Jones robbed Guilcrest and King she did not know that he intended to do so, and did not in any manner participate in the commission of the offense. Defendant testified that she and Jones had left Luckett's apartment to go to a liquor store to purchase additional supplies for a party

which was then in progress, that as they walked along the street singing, Jones stated that he was going to rob somebody. She, thinking he was joking and not knowing that he would do anything like that, said "Okay." She had not seen a weapon and did not think that he intended to commit any offense. When she saw that Jones intended to rob Guilcrest and King, she ran, and when Jones caught up with her he gave her some money. The record shows that Jones was subsequently found to be unfit to stand trial by reason of mental illness.

When Luckett was originally called as a witness the People objected to certain portions of his testimony on the ground that it constituted an attempt to prove an alibi for the defendant and that in her response to the People's interrogatories no alibi defense had been indicated. This occurred on Friday afternoon, and following argument in chambers, the trial was recessed until Monday. On Monday Luckett was recalled. Upon completion of Luckett's testimony defendant was called as a witness, and in the course of her testimony, defense counsel advised the court that she had overlooked asking Luckett certain questions for the purpose of eliciting testimony to impeach the testimony of Guilcrest. An offer of proof made by defendant's attorney shows that if recalled Luckett would testify that on at least five occasions the complainant, Amos Guilcrest, came to his home and discussed the case; that he said "that he would not put Reucshelle Harris into this matter if he were paid the sum of $300."

Defendant argues that the circuit court erred in denying her request and that "the admissibility of evidence to show motive and bias to lie is so well established as to not merit documentation." Both Guilcrest and the arresting police officer testified that when defendant was taken into custody she said, "This is the first time I have ever done this." Although defendant denied participation in the commission of the offense, she admitted that she was

present at the scene. Defendant admitted that she was in possession of money taken in the robbery, and the testimony shows that when apprehended Jones was carrying the jacket which defendant had worn at the time of the robbery and defendant was carrying the leather coat which had been worn by Jones. The only matter about which Guilcrest testified, not also shown by other testimony, was that when the robbery occurred Jones had a .25-caliber magnum pistol and defendant had a dark sweater over her hand as though she were holding a gun. This was the only testimony which could have been motivated solely by Guilcrest's prejudice against defendant. Whether to permit the recall of the witness was a question for the sound discretion of the circuit court, and assuming, *arguendo,* that the court should have permitted Luckett's recall, we hold that the failure to do so was harmless.

Finally, defendant contends that the appellate court erroneously considered nonexistent testimony in reaching its conclusion that the evidence against the defendant was overwhelming. This contention is based on the fact that in its opinion the appellate court refers to the testimony "by the other robbery victim, Michael King" (57 Ill. App. 3d 639, 644) and the record shows that King did not testify. We need not engage in conjecture concerning the precise meaning intended by the court in making this statement. Defendant is correct in arguing that King did not in fact testify, but, nevertheless, the record contains sufficient evidence to prove defendant guilty beyond a reasonable doubt. We find no reversible error and the judgment of the appellate court is affirmed.

*Judgment affirmed.*