THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CARL VEAL, Defendant-Appellant.

Third District No. 3—85—0773

Opinion filed November 13, 1986.—Rehearing denied December 18, 1986.

Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (Gerald P. Ursini, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial in the circuit court of Peoria County, the defendant, Carl Veal, appeals his convictions on two counts of aggravated indecent liberties with a child.

On March 19, 1985, the Peoria County grand jury indicted the defendant on two counts of aggravated indecent liberties with a child pursuant to section 11—4.1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 11—4.1(b)). Both counts involved offenses which allegedly occurred, against a female under nine years of age, sometime between May 1 and June 21, 1984. The charges,

however, were not filed against the defendant until March 5, 1985, because the authorities were not made aware of the defendant's alleged misconduct until March 4, 1985. Count I alleged the defendant placed his sex organ in the victim's mouth, while count II alleged he inserted an object in her anus. Following a jury trial, the defendant was convicted on both counts, and this appeal follows. We affirm.

■ The defendant initially contends that the two charges of aggravated indecent liberties with a child should have been dismissed because the statute defining such offense was repealed before the charges were filed and because the saving clause of the Illinois Criminal Assault Law of 1984 (Pub. Acts 83—1067, 83—1117), does not preclude the dismissal since the saving clause only applies to prosecutions pending on the effective date of the law.

We recently rejected the same argument in *People v. Haggard* (1986), 143 Ill. App. 3d 860, 493 N.E.2d 693, where we held section 4 of "An Act to revise the law in relation to the construction of statutes" (Ill. Rev. Stat. 1983, ch. 1, par. 1103), as incorporated into the Criminal Code by virtue of section 34—3 (Ill. Rev. Stat. 1983, ch. 38, par. 34—3), as dispositive of the issue. We decline to restate the reasoning of *Haggard* in detail but, rather, once again hold that to accept the defendant's theory would defy logic and case precedent, and we reject his challenges to the validity of his conviction.

■ Defendant next contends he was tried and convicted in violation of his rights under the double jeopardy clauses of the United States and Illinois constitutions. (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 10.) The test for determining whether further prosecution is prevented by double jeopardy principles was stated by the United States Supreme Court in *Oregon v. Kennedy* (1982), 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083, and has been followed in Illinois. (See *People v. Davis* (1986), 112 Ill. 2d 78, 491 N.E.2d 1163; *People v. Lovinger* (1985), 130 Ill. App. 3d 105, 473 N.E.2d 980; *People v. Dorsey* (1984), 129 Ill. App. 3d 128, 472 N.E.2d 101.) In *Kennedy*, the court held, *inter alia*, as follows:

"Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeding in aborting the first on his own motion." (*Oregon v. Kennedy* (1982), 456 U.S. 667, 676, 72 L. Ed. 2d 416, 425, 102 S. Ct. 2083, 2089.)

The court went on to state, as follows:

"We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial,

he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." 456 U.S. 667, 679, 72 L. Ed. 2d 416, 427, 102 S. Ct. 2083, 2091.

■ We have reviewed the instant record and do not believe the defendant can rely on the principles of double jeopardy to bar his retrial. The facts disclose that during the first trial, the prosecution called the 10-year-old victim to testify. The outcome of her testimony was not favorable to the prosecution. The following day, the prosecution asked the trial court to exercise its discretion and allow the 10-year-old to be recalled. Defendant objected and argued that the prosecutor and child counselors had spoken with the girl and prompted her and that there was no reason to let her testify about the same matters again after such coaching during the trial. (See *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 394 N.E.2d 496.) The trial court allowed her to be recalled.

■ The decision to allow the recall of a witness rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. (*People v. Harris* (1979), 74 Ill. 2d 472, 386 N.E.2d 60; *People v. Ishmael* (1984), 126 Ill. App. 3d 320, 466 N.E.2d 1334.) Our review of the record discloses defendant's failure to demonstrate an abuse of discretion by the trial court in allowing the prosecution to recall the victim as a witness. The trial court found no evidence that the prosecution's conduct provoked defendant into moving for a mistrial, nor do we.

Next, defendant argues that since the trial court made a finding of fact that the police made promises or suggestions of leniency and counseling to the defendant and that since the defendant testified he was induced to give a statement based upon such promises, the trial court erred in refusing to suppress his statements as involuntary.

■ The admission into evidence of a confession not voluntarily made is a violation of an accused's constitutional right to due process of law. (*Haynes v. Washington* (1963), 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336.) A court, in determining whether a confession is voluntary, must ascertain whether the defendant's will was overborne at the time he confessed or whether the confession was made freely, voluntarily, and without compulsion or inducement of any sort. (*Haynes v. Washington* (1963), 373 U.S. 503, 10 L. Ed. 2d

513, 83 S. Ct. 1336; *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Such a determination must be made by considering the totality of the attendant circumstances. (*Haynes v. Washington* (1963), 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336; *People v. Walden* (1976), 43 Ill. App. 3d 744, 357 N.E.2d 232.) The details of the interrogation and the characteristics of the accused should be given consideration. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) Confessions induced by promises or suggestions of leniency have been held involuntary. (*People v. Heide* (1922), 302 Ill. 624, 135 N.E. 77; *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50.) However, even where promises or suggestions of leniency have been made, the confession is not necessarily inadmissible. The ultimate question is whether, considering the totality of the attendant circumstances, defendant's will was overcome at the time he confessed. (*People v. Hartgraves* (1964), 31 Ill. 2d 375, 202 N.E.2d 33, *cert. denied* (1965), 380 U.S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104; *People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57; *People v. Houston* (1976), 36 Ill. App. 3d 695, 344 N.E.2d 642, *cert. denied* (1977), 429 U.S. 1109, 51 L. Ed. 2d 562, 97 S. Ct. 1143.) Moreover, mere exhortations to tell the truth or to make a statement do not, without more, render a subsequent confession inadmissible. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Jones* (1972), 8 Ill. App. 3d 849, 291 N.E.2d 305.) A confession is admissible if its voluntariness is proved by a preponderance of the evidence, and the finding of the trial court will not be reversed unless it is contrary to the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601; *People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483; *People v. Woodburn* (1979), 75 Ill. App. 3d 532, 393 N.E.2d 1332.

In this case, the facts disclose the following occurrences. The defendant's son and his girlfriend reported to the police that they had found some Polaroid pictures of the victim in the defendant's briefcase. Several pictures showed her with her dress pulled up or her pants pulled down. In one picture, she had a penis in her mouth. The son recognized the stomach and pubic hair of the man in the picture as that of the defendant. Detective David Briggs interviewed the victim and later went to the defendant's residence with Detective Hawkins. Briggs asked the defendant if he knew why the officers were there and he answered in the affirmative and stated he was willing to cooperate with them. Briggs stated he wanted to talk to the defendant about his involvement with his niece, the victim.

Defendant agreed to go with the officers to the police station.

At the station, defendant was given his *Miranda* rights by Detective Briggs. He was informed his son had given a statement concerning the photographs, which he admitted taking at his former residence. He also admitted being the man in the picture which depicted the victim engaging in oral sex. He further admitted to Briggs that the victim performed oral sex with him six to eight times. Detective Briggs made a statement to the defendant that "probably nothing will come of this, probably you won't stay overnight and we can get you some help." This statement was made subsequent to defendant being given his *Miranda* rights but prior to his confession.

■ Our review of the record discloses the trial court held that, under the totality of the circumstances, the confession was voluntarily given. In so ruling, the court found that the defendant did not confess in return for a promise of leniency but, rather, determined that the defendant confessed because he had a guilty conscience and because he knew he had been discovered. Another factor which weighed in the court's decision was the fact that the defendant's own son turned him in to the authorities. Other factors of noteworthy importance include the following: (1) this case did not involve a lengthy interrogation—defendant gave his oral statement within 17 minutes of his arrival at the police station and signed his written statement immediately afterwards; (2) defendant was not beaten or abused or in any way given the "third degree"; (3) defendant was allowed the use of the bathroom; (4) defendant was allowed to eat and drink if he so desired; (5) defendant was 39 years old and had completed 12 years of education; and (6) defendant indicated in the written statement that he had not been promised immunity from prosecution or leniency of any kind in return for his statement. Defendant also stated at trial, during cross-examination, that he was not promised immunity from prosecution or leniency of any kind by any police officer, prosecuting attorney, or any other person in order to obtain the written statement. We believe the trial court's decision denying defendant's motion to suppress his confession is not against the manifest weight of the evidence.

■ Defendant next argues that his conviction should be reversed and a new trial granted because the State did not call a material witness at the suppression hearing who was present when the alleged offers of leniency and counseling were made to the defendant by a police officer. When the voluntary nature of a confession is questioned by a motion to suppress, the State must produce all ma-

terial witnesses connected with the taking of the statements or explain their absence. (Ill. Rev. Stat. 1985, ch. 38, par. 114—11(d); *People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712.) In our opinion, the State produced the material witnesses necessary to discharge its burden of establishing the voluntariness of the defendant's statement. Even though Detective Hawkins was present when the alleged promises were made, the officer who made the alleged offers, Detective Briggs, did testify. There is no evidence that Hawkins' testimony would have differed from Briggs' testimony. Accordingly, we conclude that Hawkins' testimony was not material to establishing the voluntary nature of the defendant's statement.

 █ The next argument advanced by the defendant is that the trial court erroneously admitted testimony describing the contents of unavailable photographs which allegedly depicted the sex offenses charged in the indictment because the witnesses giving the description had no personal knowledge of the events. Defendant contends that since the witnesses were not present when the photographs were taken, the State could not lay a proper foundation for the admission of the photographs themselves had they not been destroyed and, therefore, hearsay evidence was presented to the trial court. We disagree. Evidence may be introduced when there is proof to connect the evidence to the defendant and to the crime. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112.) Also, a defendant's attempt to destroy evidence is admissible to establish consciousness of guilt. *People v. Fiorito* (1952), 413 Ill. 123, 108 N.E.2d 455.

 We agree with the State that, in the instant case, ample evidence was presented to connect the defendant to the photographs and to the crime. Testimony established that the defendant's son and his girlfriend were looking for a postage stamp when they discovered the defendant's locked briefcase. They were able to open the briefcase, where they discovered five to seven blurry Polaroid photographs of the victim. In one of the photographs, the victim had a penis in her mouth. The stomach and red pubic hair of a man were also visible. Defendant's son testified further that the defendant owned a Polaroid camera, and he also identified a wall in the photographs as looking like a wall in the defendant's former residence. The son went on to testify that he took the photographs to his girlfriend's house where they were kept. Several days later, the defendant asked his son if he had the photographs and where they were located. At that time defendant stated he had a problem. Several days later, defendant asked his son to bring the photographs home and also asked him to burn them. The son did so at the defendant's re-

quest and because he did not want to have the photographs.

In addition to the son's testimony, which tied the defendant to the photographs and the photographs to the crime, the defendant's written statement, which was admitted into evidence, described the pictures found by the son. Defendant admitted taking the pictures and that he was the man portrayed in the photograph depicting the victim performing oral sex. We believe the testimony regarding the photographs was properly admitted into evidence and that the trial court did not abuse its discretion in so doing.

Finally, defendant contends that (1) because his statements to the police were not corroborated by sufficient independent evidence of the *corpus delecti* of the two sex offenses charged, his convictions should be reversed; (2) where the State failed to call the victim to testify and defense counsel, during closing argument, properly inferred that her testimony would have been unfavorable to the State, he was denied a fair trial before the jury because the prosecutor exceeded the bounds of rebuttal argument by explaining why the victim was not called, suggesting that her testimony would have been favorable, and faulting the defense for not calling her; and (3) one of his two convictions for aggravated indecent liberties with a child should be vacated. We have reviewed these arguments and find no support for them. To discuss these arguments at length would unduly add to the length of this opinion which, we believe, is unnecessary in view of the lack of substance to such contentions.

Accordingly, for the reasons set forth in this opinion, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.